---

### THE A. C. ROSE.

(Circuit Court of Appeals, Second Circuit. February 9, 1915.)

#### No. 140.

COLLISION ⊂⟩71—STEAM VESSELS—TUGS ENTERING AND LEAVING SLIP.

A collision in North River, between the tug Rose, backing out of a slip, and the tug Edna, coming up the river against a strong ebb tide, near the end of the piers, to enter the same slip, *held* due solely to the fault of the Edna in failing to drop back out of the way; the Rose having the right of way, and it appearing that she gave the customary slip whistle and was properly navigated.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 101; Dec. Dig. ⊂⟩71.]

Appeal from the District Court of the United States for the Eastern District of New York.

This cause comes here upon appeal from a decree of the District Court, Eastern District of New York, holding the tug Edna and the tug A. C. Rose both at fault for a collision which occurred November 12, 1913, off the mouth of the slip between Piers 57 and 58, North River, New York; the latter pier being used by the Atlantic Transport Line.

---

Harrington, Bigham & Englar, of New York City (T. C. Jones, of New York City, of counsel), for appellant.

Herbert Green, of New York City, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The Edna, light, and the tug S. O. 18, with a barge on her starboard side, were coming up river in a strong ebb tide; the Edna was nearer to the piers, and was bound into the slip between 57 and 58 to take out a barge. The S. O. 18 was bound into the same slip; the Rose was already in the slip, where she had left a barge and, intending to back out, sounded a slip whistle, and proceeded to do so, having a lookout on her stern. As she backed out into the stream the ebb tide swung her stern down. Aware of the proximity of the Edna and S. O. 18, the master of the Rose put his wheel hard-a-starboard and tried to clear Pier 58. The car floats lying at the end of that pier interfered with him, and in backing to repeat his manœuver collision with the Edna occurred. Upon the testimony, which is conflicting on some points, we are satisfied that the Rose sounded her slip whistle at the proper time, it was heard by the S. O. 18, and should have been heard by the Edna. The latter's navigation must be judged as if she had heard it.

We do not concur with the District Judge in the conclusion that:

"It seems clear that when the slip signal was given by the Rose, the S. O. 18 and the Edna had passed Pier 57. In view of the tide, it must have been apparent to the captain of the Rose that, if he backed out at this time, he would be likely to collide with the Edna."

Assuming that they were a short distance above Pier 57, they were in a strong ebb tide, in which they could easily drop back sufficiently to leave the outlet from the slip free for the Rose to back out from. The Rose had the right of way, and her slip whistle advised both the other tugs that she intended to navigate accordingly. Her master was entitled to assume that they would respect her right of way, as they could readily do, and we see no fault in his navigating on that assumption. Probably because she failed to hear the whistle (although nearer to it than the S. O. 18), the Edna failed to navigate as she should have done, kept on, and as the District Judge has found (the evidence fully sustains him), "crowded in between the S. O. tug and the tow and the barges at the end of Pier 57. * * * She continued on her course in disregard of [the Rose's] signal." We attach no importance to the damage done at the stern of the Edna, which it is contended indicates that she was back against the barges at the end of Pier 57 when she was struck. No doubt after collision she went back with the tide and the force of the blow, and struck her stern against those barges.

The decree is reversed, with costs of this appeal to the Rose, and cause remanded, with instructions to dismiss the libel, with costs of both courts to the Rose.